IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frances Lundberg,<br><br>                Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                Defendant. | No. CV-13-02465-TUC-RCC (BPV)<br><br>**REPORT AND RECOMMENDATION** |

    Plaintiff, Frances Lundberg, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff raises one issue on appeal: whether the Administrative Law Judge ("ALJ") erred by determining that Plaintiff was not entitled to retroactive wife's insurance benefits as a divorced spouse from the time she reached full retirement age in April 2006 until March 2009, when the agency determined she was entitled to wife's benefits.

    Pending before the court is an opening brief filed by Plaintiff (Doc. 17), the Commissioner's response (Doc. 21), and Plaintiff's reply (Doc. 22). Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bernardo P. Velasco for a report and recommendation. (Doc. 10.) Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, affirm the decision of the ALJ.

## I. Procedural and Factual History

Plaintiff, born on October 21, 1940, reached full retirement age ("FRA") at age 65 and 6 months, or on April 21, 2006. *See* 20 C.F.R. § 404.409 (defining FRA); Administrative Record ("Tr.") 28, 94. She was married to Donald Lundberg from February 14, 1961, until they were divorced on June 14, 1984. Tr. 27-28.

Plaintiff attended an appointment at her local Social Security office and filed for Medicare benefits only on September 20, 2005. Tr. 75, 83, 90-91, 140. Plaintiff's appointment confirmation indicates the type of claim the appointment was scheduled for was "Retirement". Tr. 90. At the appointment, however, Plaintiff did not file for retirement benefits or divorced spouse's benefits at that time (*see, e.g.*, Tr. 83). The notes from Plaintiff's file show that Plaintiff stated that she would wait until her FRA, or April. 2006, to apply for retirement insurance benefits ("RIB"). Tr. 73. Plaintiff admitted that at this appointment she did not ask any "specific question[s]" regarding her ability to file on her ex-husband's record, but stated that she gave the claims representative all of her information and he did not mention that she had the ability to file on her ex-husband's record. Tr. 140-41.

Plaintiff began receiving Medicare benefits in October 2005 (Tr. 86-88). In an October 2005 notice of award letter, the agency informed Plaintiff that her Medicare benefit was "the only one [she] could receive from Social Security" and that she would have to file another application in the future to receive any other kind of benefit. Tr. 86. In February 2006, Plaintiff's ex-husband, Mr. Lundberg, filed a Medicare only application. Tr. 36. Mr. Lundberg reached FRA in October 2006 and in November 2006, Mr. Lundberg filed an application for retirement benefits listing Plaintiff as a divorced spouse. Tr. 36, 38. These applications created what are called claim "leads", an indication that Social Security should attempt to find the person listed to see if that person wants to file for Social Security benefits. Tr. 38. Plaintiff asserts that she never received notice, or a "lead letter" for benefits. Tr. 131. The agency searched an Online Retrieval System for

- 2 -

a lead letter for benefits addressed to Plaintiff in 2006 and was unable to locate any such lead letter. Tr. 133.

On September 10, 2009, Plaintiff filed a Title II application for wife's insurance benefits as the divorced spouse of Donald H. Lundberg. Tr. 28-29. Plaintiff testified that she did not learn that she could file on his record until she read a magazine article, which led her to file for wife's benefits in 2009. Tr. 141, 143. Plaintiff said that she did not file for her own benefits when she reached FRA because she wanted to let that benefit grow and that she worked until age 70. Tr. 141, 143. Receiving wife's insurance benefits allows Plaintiff to receive benefits while at the same time letting her benefit mature until she elected to draw on her own benefits.

On September 27, 2009, the agency determined that Plaintiff was entitled to wife's benefits effective March 2009, six months retroactive to her filing date of September 2009 pursuant to 42 U.S.C. § 402(j)(1)(B). Tr. 31-33. In November 2009, Plaintiff filed a request for reconsideration disputing the March 2009 start date and requesting wife's benefits retroactive to April 2006. Tr. 34-35. Plaintiff's request for reconsideration was denied in April 2010. Tr. 37-39.

After holding a hearing (Tr. 134-59), at which Plaintiff appeared *pro se*, the Administrative Law Judge ("ALJ") issued his decision finding that Plaintiff was not entitled to wife's insurance benefits retroactive to April 2006. Tr. 16-18. Specifically, the ALJ found that Plaintiff filed for Medicare benefits only in September 2005, at age 65, and that she did not contact the agency again until she filed for wife's insurance benefits as a divorced spouse in September 2009. Tr. 17. Although Plaintiff alleged that she was misinformed concerning wife's benefits in 2005, the ALJ noted that an agency supervisor had reviewed the record and "found no indication or likelihood that [Plaintiff] was misinformed". Tr. 17. Therefore, the ALJ concluded that Plaintiff was given the earliest possible retroactive entitlement date of March 2009 (six months prior to her filing date of September 2009), and was not entitled to wife's insurance benefits retroactive to April 2006. Tr. 17-18. This decision became the Commissioner's final decision when the

Appeals Council denied review. Tr. 5-8. Plaintiff then commenced this action for judicial review. (Doc. 1)

## II. Discussion

### A. Standard of Review

The district court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "'Substantial evidence' means 'more than a scintilla,' but 'less than a preponderance.'" *Smolen*, 80 F.3d at 1279 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) and *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)) (internal citations omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Where the evidence may be susceptible of more than one rational interpretation, the decision of the Commissioner, acting through the ALJ, must be upheld. *See Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998); *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (per curiam).

### B. Analysis

One of the prerequisites for receiving wife's insurance benefits as a divorced spouse is the filing of an application for benefits; benefits cannot be paid for periods earlier than the retroactive limit provided for in the Social Security Act ("Act"). *See* 42 U.S.C. § 402(b)(1)(A); *Johnson v. United States*, 572 F.2d 697 (1978)(finding that the explicit language of § 402 makes filing an application a substantive condition to receiving benefits under the Act); *see also Driver v. Heckler*, 779 F.2d 509 (1985). It is

undisputed that, but for Plaintiff's failure to file an application, Plaintiff was entitled to wife's insurance benefits on her ex-husband's record as of April 2006, when she attained FRA. See (Doc. 21 at 5-6). It is also undisputed that Plaintiff did not file a claim for wife's benefits until September 2009. Thus, under the retroactivity provision of the Act, she was entitled to benefits commencing March 2009. See 42 U.S.C. § 402(j)(1)(B).

The only exception to this rule concerns circumstances where no application is filed because an applicant is misinformed by agency employees about her eligibility to receive benefits; in such cases the agency may backdate an application for benefits. *See* 42 U.S.C. § 402(j)(5); *see also* 20 C.F.R. § 404.633.

In order to sustain a claim of misinformation, the claimant must demonstrate: (1) the information was provided by an employee acting in his or her official capacity, (2) the information was incorrect, misleading, or incomplete in a situation when providing additional information was required, (3) the information was provided orally or in writing, and (4) the information was provided in response to a specific request from the claimant about eligibility for benefits.. *See* 20 C.F.R. § 404.633 (c)(1)-(4).

Under the agency's regulations a deemed filing date based on misinformation must be supported by sufficient evidence. *Id*. at (d)(1)-(2). Such evidence may be "preferred" or "secondary." *Id*. "Preferred evidence" is written evidence which "relates directly" to the applicant's inquiry about their eligibility for benefits and which shows that the agency provided misinformation which caused the applicant to not file an application. *Id.* at (d)(1). This evidence includes a notice, letter, or other document issued by the agency or the agency's records of a telephone call, letter, or in-person contact. *Id*. at (d)(1)(i).

In the absence of "preferred evidence," the agency will consider "other evidence," which includes, but is not limited to, the applicant's statements, statements from others, and an evaluation of the credibility and validity of the claimant's allegations in conjunction with other relevant information. *Id.* at (d)(2)(i)-(iii). However, the agency may not base a finding that misinformation was given by an agency employee upon only

a claimant's statements. *Id.* at (d)(2) ("We will not find that we gave you misinformation, however, based solely on your statements.").

The ALJ determined Plaintiff was not excused from her failure to timely file an application for wife's benefits because the record did not establish that Plaintiff received misinformation concerning these matters. Because there is substantial evidence to support the ALJ's determination the Agency's decision denying benefits must be affirmed. While the ALJ found no reason to question Plaintiff's credibility (*see generally* Tr. 17-18, 152 ("You're a credible lady."), and neither does this Court, Plaintiff's statements, even if true, do not establish that Plaintiff was provided misinformation about her eligibility for wife's insurance benefits as a divorced spouse.

Plaintiff's evidence does not support a finding that she was misinformed as that term is defined under the regulations. First, the plain language of the regulation and the examples provided to illustrate the term "misinformation" speak in terms of affirmatively providing misinformation in response to a direct inquiry about filing an application for benefits. *See generally*, 20 C.F.R. § 404.633(a). There is no evidence that Plaintiff was provided misinformation about her eligibility for wife's benefits in response to a specific inquiry she made about such an application.

Upon review of the record there is no evidence that the representative Plaintiff spoke to in September 2005 provided her with misinformation in response to any specific request. There is no evidence that Plaintiff expressed any intention to file for retirement benefits on her ex-husband's record in 2005. Granting Plaintiff the benefit of the doubt, her evidence establishes she made an appointment to inquire into retirement benefits (*See* Tr. 90), but that she did not directly inquire about her eligibility to receive wife's insurance benefits, nor that she was misinformed about her eligibility. In fact, Plaintiff admitted that at this appointment she did not ask any "specific question[s]" regarding her ability to file on her ex-husband's record. Tr. 140-41. The agency reviewed Plaintiff's record and "found no indication or likelihood that [Plaintiff] was misinformed" Tr. 17; see Tr. 37.

As the ALJ noted at the administrative hearing, the "bottom line is going to come down to what the duty was of the claims rep[resentative] that was dealing with you to advise you of this nuance." Tr. 146. Plaintiff's lack of knowledge of her eligibility for wife's insurance benefits is not one of the circumstances when the Agency can recognize an earlier application filing date. *See* § 404.633 (c)(1)-(4). The undersigned is unaware of any authority which, in the absence of a direct inquiry, establishes that the agency has a duty to solicit applications or actively advise members of the public as to their rights to file a claim for spousal retirement benefits. Moreover, a review of the record indicates that, in September 2005, Plaintiff decided to file only for Medicare benefits because she had not yet attained FRA. Tr. 37, 73. Thus, Plaintiff's inquiry into Medicare benefits, for which she was eligible, did not trigger an affirmative duty for the agency representative to advise Plaintiff, who was nearing FRA, of her eligibility for wife's insurance benefits. Such a failure to advise is not what the agency regulations contemplate by the term "misinformation." *See, e.g., Holcomb v. Colvin*, 2014 WL 51148, at *3, fn. 4 (W.D. Wash. Jan. 7, 2014) (unpublished) (noting that the Commissioner's failure to advise someone regarding a claim for spousal retirement benefits does not constitute the type of misinformation contemplated by the agency's regulations). The agency representative's failure to advise Plaintiff about her eligibility for benefits for which she was not applying or into which she was not inquiring, is not the same as being provided with misinformation and does not entitle her to an earlier deemed filed date.

Plaintiff also asserts several other incidents where the agency has supplied her with misinformation regarding her retirement age and filing deadlines for appellate review of her case. Though unfortunate, this misinformation is also not in response to a direct inquiry about her spousal benefits and did not in fact misinform her about her eligibility for those benefits, and thus cannot serve as grounds to backdate her application. *See* 20 C.F.R. § 404.633(c)(1)-(4).

Looking at the record as a whole, considering both evidence that supports and undermines the ALJ's findings, it is clear that the evidence may be susceptible of more

than one rational interpretation, but in that case, the decision of the Commissioner, acting through the ALJ, must be upheld. *See Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998); *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (per curiam).

### IV.     Recommendation

This Court recommends that the District Court, after its independent review of the record, enter an order affirming the decision of the Commissioner.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b). **No reply to any response shall be filed**. *See id.* If objections are filed the parties should use the following case number: **CV 13-2465-TUC-RCC.**

If objections are not timely filed, then the parties' right to de novo review by the District Court may be deemed waived.

Dated this 12th day of November, 2014.

_____
Bernardo P. Velasco
United States Magistrate Judge